UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

POONAM D. SHAH,

               Plaintiff,

      v.

GENERAL MOTORS LLC,

               Defendant.

Case No. 23-cv-04319-SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Re: Dkt. No. 34

Defendant has filed a motion to dismiss the fourth and fifth causes of action of plaintiff's First Amended Complaint ("FAC").  Dkt. No. 34.  Plaintiff opposes and requests leave to file a Second Amended Complaint.  Dkt. No. 37.  Pursuant to Civil Local Rule 7-1(b), the Court determines that the motion is suitable for resolution without oral argument, and VACATES the January 5, 2024 hearing.  For the reasons set forth below, the Court GRANTS defendant's motion to dismiss the fraud claims without leave to amend and DENIES defendant's motion to dismiss claims under the "unlawful" and "unfair" prongs of Business & Professions Code § 17200 (California's Unfair Competition Law).

## BACKGROUND

**I.    Factual Allegations[1]**

This action arises from plaintiff's purchase of a new 2019 Chevrolet Bolt ("subject vehicle").  Dkt. No. 33 ("FAC") ¶¶ 5-6.  On July 17, 2019, plaintiff bought the subject vehicle from "Chevrolet

---

[1] For the purposes of this motion to dismiss, the Court treats as true the factual allegations as stated in plaintiffs' FAC and draws all reasonable inferences in plaintiffs' favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

United States District Court<br>Northern District of California

1    of Stevens Creek, an authorized dealer and agent of General Motors." *Id.* ¶ 6.  General Motors

2    ("GM") has 205 "dealers" in California.  *Id.*  "As part of the purchase transaction, [GM] issued an

3    express warranty." *Id.*  The vehicle was sold to plaintiff with the "express warranties" that it "would

4    be free from defects in materials, nonconformities, or workmanship during the applicable warranty

5    period and to the extent the [Bolt] had defects, [GM] would repair the defects." *Id.* ¶ 7.  This

6    included an 8-year, 100,000-mile warranty on the vehicle's battery.  *Id.*

7          According to plaintiff, GM "falsely represented" that the vehicle was "safe and functional

8    for normal use" and "marketed the subject vehicle in [a] false and misleading manner by advertising

9    it as safe and function[al]." *Id.* ¶¶ 13, 26.  The vehicle was not safe or functional "because the

10   batteries may ignite when they are either fully charged or fall below seventy (70) miles remaining

11   mileage" and "the vehicle [] cannot be parked inside overnight due to fire risk." *Id.* ¶ 13.  GM

12   allegedly also falsely represented the "expected battery usage and mileage capacity of the vehicle."

13   *Id.* ¶ 37.

14         In a January 2016 press release, GM said the Bolt would have "a battery range over 200

15   miles because of the use of a battery with improved thermal operating performance." *Id.* ¶ 15.[2]  In

16   December 2016, GM "first became aware of issues with the battery of the Bolt" and instituted a

17   "Bolt EV High Voltage Battery Exchange and Internal Parts Process to replace defective batteries."

18   *Id.* ¶ 16.  "Despite this knowledge, [GM] began running commercials in January 2017 featuring the

19   range of the Bolt's battery." *Id.* ¶ 17.  In November 2017, GM "created a repair program for the

20   Bolt in response to findings of issues with low voltage in batteries" such as an October 2017 National

21   Highway Safety Administration ("NHTSA") "warning that overcharging lithium-ion batteries, such

22   as the battery in the Bolt, can result in spontaneous ignition." *Id.* ¶¶ 18-19.  In April 2018 GM

23   "created another program to update the vehicle's software for a low voltage condition" and in May

24   2018 GM "again notified its dealers regarding issues with the batteries in the Bolt." *Id.* ¶ 20-21.  In

25   August 2018, GM "created another program related to the battery's software and its ability to

26   monitor the charge of the battery." *Id.* ¶ 22.  In March 2019, prior to plaintiff's purchase of the

27   _____

28   [2] Plaintiff asserts this "mileage representation was made absent any reference to the EPA estimated mileage range." *Id.* ¶ 15.

*United States District Court*
*Northern District of California*

2

subject vehicle, GM "became aware of the first battery fire involving the Chevrolet Bolt." *Id.* ¶ 23.

"[A]t no time prior to the sale of the [Bolt] did [GM] disclose the battery issues to plaintiff or alter its marketing campaign." *Id.* In October 2019, Adam Piper, "a [GM] employee and Bolt battery expert" allegedly stated: "We engineered the battery system so that you can charge to 100% and maximize range. Do whatever is best for your personal circumstances. If you want maximum range, charge to 100%." *Id.* ¶ 24. "Mr. Piper's statement was made despite [GM]'s knowledge of the fire risk posed by charging the battery to full capacity." *Id.* By August 2020, GM "was aware of at least 12 fires involving the Chevrolet Bolt" and in October 2020 the NHSTA opened an investigation into the Bolt. *Id.* ¶¶ 24-25.

In 2021, GM issued a recall notice for the subject vehicle, "stating that its batteries may ignite when nearing a full charge." *Id.* ¶¶ 27, 36. In that recall notice, GM warned that the vehicle's charge should not exceed 90%, the battery mileage should not fall below 70 miles remaining, and the vehicle should not be parked indoors overnight due to fire risk. *Id.* Due to this "significant safety risk," plaintiff has been "forced to make unforeseen accommodations and take precautions that interfere with their normal and expected use of the vehicle." *Id.* ¶¶ 28, 38-39.

According to plaintiff, GM undertook a marketing strategy advertising a competitive mileage capacity (at or about 259 miles electric range on full charge) "to convey that consumers, such as Plaintiff, are receiving an[] electric vehicle that is able to maintain battery life for long distances." *Id.* ¶ 32; *see also id.* ¶ 81 ("Defendant's mileage range advertisements were part of an extensive advertising campaign"). Plaintiff was exposed to these advertisements, and based on GM's advertising, "believed that they were purchasing a vehicle that was functional and safe" and "could not have reasonably understood or expected these representations to be untrue at the time of acquisition." *Id.* ¶¶ 33-34, 81. Plaintiff also "expected the vehicle to meet the stated long-range mileage capacity and battery usage." *Id.* ¶ 35.

GM "willfully, falsely, and knowingly marketed the subject vehicle as having the range capability to reach 259-miles on a full charge." *Id.* ¶ 78. GM's representations "were false because the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the range capability of the vehicle." *Id.* ¶ 79. GM

3

"knew the representations were false and intended Plaintiff to rely on them" and plaintiff "decided to buy the vehicle based in part on the false and misleading representations" and "based in substantial part on the representations communicated" through marketing material. *Id.* ¶¶ 81, 89. The mileage range was at the center of GM's marketing efforts and "featured prominently in virtually every advertisement and consumer communication." *Id.* ¶ 83. "Through dealership training materials leading to representations at the point of sale, vehicle brochures, the manufacturer websites, print advertisements, television advertisements, and other avenues, [GM] pervasively and consistently represented that the vehicle had the best-in-class fuel economy and touted its specific mileage range on a single charge, as well as its supposedly superior battery, that was presumably safe." *Id.* ¶ 83.

GM "concealed and suppressed the fact that the vehicle could not achieve its expected range and safety." *Id.* ¶ 84. Knowledge and information about the vehicle's defects were "in the exclusive and superior possession of the Defendant and their dealers" and plaintiff "could not reasonably discover the defect through due diligence." *Id.* ¶ 85.

Plaintiff's "use and enjoyment of the vehicle has been severely limited" and plaintiff "has anxiety as a direct result of the risk the vehicle may spontaneously ignite." *Id.* ¶¶ 40, 42. Plaintiff "reasonably and detrimentally relied on [GM]'s misrepresentations when purchasing the vehicle" and "would not have purchased the vehicle or would have paid significantly less for the vehicle" had she known it was "neither safe nor functioned as advertised." *Id.* ¶¶ 43, 90, 94. Plaintiff "ended up overpaying for the vehicle and receiving a quality of vehicle less than what they expected to receive." *Id.* ¶ 100. GM has not yet advised plaintiff when the recall can be fixed. *Id.* ¶ 126.

## II.    Procedural History

On July 26, 2023, plaintiffs filed this action in the Alameda County Superior Court against General Motors and Doe defendants 1 through 10. Dkt. No. 1-1. The complaint alleges three causes of action under the Song-Beverly Consumer Warranty Act, a fourth case of action claiming fraud, and a fifth cause of action alleging violations of the "unfair," "fraudulent," and "unlawful" prongs of Business & Professions Code § 17200. *Id.* On November 7, 2023, the Court granted defendant's

motion to dismiss the fourth cause of action of plaintiff's complaint and claims under the "fraudulent" prong of Business & Professions Code § 17200, with leave to amend.[3]  Dkt. No. 29. Plaintiff filed a FAC on November 17, 2023.  Dkt. No. 33.  Defendant now moves to dismiss the fourth and fifth causes of action of the FAC in their entirety.  Dkt. No. 34.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A pleading must contain allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Dismissal under Rule 12(b)(6) is proper when the complaint "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

Under Rule 9(b), fraud claims must be pled with particularity.  Rule 9(b)'s heightened

---

[3] In the first motion to dismiss, defendant did not move to dismiss claims under the "unfair" and "unlawful" prongs of the California Business and Professions Code § 17200 (part of the fifth cause of action).

United States District Court
Northern District of California

pleading requirements demand that "[a]verments of fraud must be accompanied by the who, what, when, where, and how" of the misconduct charged and "must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  Specifically, fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  California Business & Professions Code § 17200 claims based on fraud "must satisfy the particularity requirement of Rule 9(b)." *Swartz*, 476 F.3d at 1105.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.  Fraud Claims[4]

GM argues that the new allegations in plaintiff's FAC are sparse and do not remedy the deficiencies of the initial complaint.  Dkt. No. 34 at 1.  According to GM, the FAC "mostly relies on templated, conclusory allegations identical to baseless 'fraud' claims that Plaintiff's Counsel has filed in dozens of other Song-Beverly matters against GM."  *Id.* at 3.  GM again argues that the fraud claims are based on unactionable EPA milage range estimates and fail for this reason as well. Dkt. No. 34 at 3, 9.

Plaintiff responds that the fraud claims in the FAC are properly pled, but if the Court believes additional factual specificity is needed, plaintiff can amend the complaint again to add further detail.

---

[4] The fraud claims include the fourth cause of action alleging affirmative misrepresentation and fraudulent concealment and claims under the "fraudulent" prong of Business & Professions Code § 17200.

United States District Court
Northern District of California

Dkt. No. 37.[5]  Plaintiff asserts that there is "ample evidence that prior to the sale [GM] knew of defects in the battery in the subject vehicle and did not disclose said facts to Plaintiff." *Id.*  Plaintiff further argues that the fact that GM sold numerous defective vehicles does not undercut this plaintiff's fraud claims.  *Id.*

### A.   Fraudulent Misrepresentation

#### 1.   Whether the Fraudulent Misrepresentation Claim Fails Because it is Based on EPA Estimates[6]

In the order on GM's first motion to dismiss, the Court ruled that "a failure to allege particular affirmative misrepresentations beyond the EPA estimates would require dismissal of the fraudulent misrepresentation claim."  Dkt. No. 33 of Case No. 23-cv-4314-SI at 7.  GM argues that plaintiff has failed to allege misrepresentations beyond the EPA estimates in the FAC because the January 2016 press release "can only be seen as referencing the EPA estimate" and even if "not barred by the EPA estimate rule" it fails because it is not particularly pled and is "'mere puffery' upon which a reasonable consumer could not rely, and hence [] not actionable."  Dkt. No. 34 at 9-10.  Plaintiff alleges in the FAC that the mileage representation in the January 2016 press release "was made absent any reference to the EPA estimated mileage range."  FAC ¶ 15.  Plaintiff also argues that the advertising on GM's website and statements made by Mr. Piper that the battery could safely be charged to 100 percent are different than references to the EPA estimated range.  Dkt. No. 37.[7]

Drawing all inferences in plaintiff's favor, the Court does not agree with GM that the January

---

[5] Plaintiff's opposition brief does not contain page numbers.

[6] Defendant concurrently to this motion to dismiss filed a request for judicial notice requesting the Court take judicial notice that the United States Environmental Protection Agency estimated that 2020-2022 model-year Chevrolet Bolts have a total range of 259 miles.  Dkt. No. 35.  The Court notes that plaintiff's Bolt's model-year is 2019 but nevertheless GRANTS this request for judicial notice because this data is not subject to reasonable dispute and is publicly available on the EPA's website.  *See Jarose v. Cnty. of Humboldt*, No. C 18-07383 SBA, 2020 WL 999791, at *4 (N.D. Cal. Mar. 2, 2020).

[7] The statement by Mr. Piper was made after plaintiff purchased the subject vehicle so is not addressed here.  *See* FAC ¶ 24.

2016 press release "can only be seen as referencing the EPA estimate."  Consequently, plaintiff's fraudulent misrepresentations claims are not barred by the rule that no misrepresentation occurs when a manufacturer "merely advertises EPA estimates."  *See Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 Fed. Appx. 608, 609 (9th Cir. 2014).

GM's argument that the press release is "mere puffery" upon which a reasonable consumer could not rely is particular to the fraud claim under the "fraudulent" prong of Business & Professions Code § 17200.  The standard under this statute is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations and internal quotation marks omitted).  Statements that are "generalized, vague and unspecific assertions" constitute "mere 'puffery' upon which a reasonable consumer could not rely."  *Glen Holly Entertainment, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003).  In contrast, "misdescriptions of specific or absolute characteristics of a product are actionable."  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (internal quotation marks and citations omitted).  GM cites two cases in support of its argument that the alleged statement that the Bolt would have a battery range over 200 miles constitutes "mere puffery."[8]  The Court finds a statement that a vehicle has a battery range over a specific mileage more specific than the statements deemed "mere puffery" in these cases.  The Court declines to dismiss the misrepresentation claim under the "fraudulent" prong of Business & Professions Code § 17200 on this basis.

### 2. Whether Plaintiff Plead Fraudulent Misrepresentation with Particularity

The elements of fraudulent misrepresentation are: "(1) a misrepresentation (false

---

[8] *Elias v. Hewlett-Packard Co.* involved statements made online regarding computer power supply that advertised "ultra-reliable performance," "full power and performance," "versatile, reliable system," and that the computer "delivers the power you need" or is "packed with power." 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012).  *Glen Holly Entertainment* involved statements "generally describing the 'high priority' [defendant] placed on product development and alluding to marketing efforts."  343 F.3d at 1015.

United States District Court
Northern District of California

representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004) (citations omitted).  Plaintiffs must show that the defendant was aware of the alleged defect at the time of sale.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146, 1148 (9th Cir. 2012).

The Court agrees with GM that plaintiff's FAC contains insufficient facts regarding the alleged misrepresentations.  Plaintiff alleges that GM "falsely represented" that the vehicle was "safe and functional for normal use" but does not allege that she was exposed to any specific alleged misrepresentations.  Plaintiff identifies a January 2016 press release from GM stating the Bolt would have a battery range over 200 miles, but does not allege that she read that press release prior to purchasing the subject vehicle, nor does she explain how the press release was misleading.  Plaintiff alleges she was exposed to GM advertisements about the mileage capacity of the Bolt, but does not indicate what specific advertisements she was exposed to nor what they misrepresented about the subject vehicle apart from advertising the 259-miles electronic range on full charge EPA estimate. Plaintiff does not allege that any specific GM affiliated individual made representations to her about the safety or mileage range of the vehicle. Plaintiff does not allege that any specific misrepresentations were made to her about the safety of the vehicle.[9]  In sum, plaintiff has again failed to allege the who, what, where, when, how, and specific content of the alleged misrepresentations she was exposed to, as required under Rule 9(b)'s heightened pleading requirements.  *See Vess*, 317 F.3d at 1106; *Swartz*, 476 F.3d at 764.

The Court also agrees with GM that the knowledge element is insufficiently pled. Knowledge and intent can be alleged generally.  *See* Rule 9(b).  However, plaintiff has not alleged facts from which the Court can infer that GM had knowledge of battery defects in the Bolt impacting its safety and mileage range at the time plaintiff purchased the subject vehicle.  Plaintiff alleges that prior to her purchase of the vehicle, GM was "aware of issues with the battery of the Bolt," instituted

---

[9] The closest allegation is that the advertising and consumer communication materials "touted [the Bolt's] specific mileage range on a single charge, as well as its supposedly superior battery, that was presumably safe."  FAC ¶ 83.

a process to replace defective batteries in the Bolt, and created repair programs for the Bolt in response to findings of issues with low battery voltage.  Although these facts are sufficient to allege knowledge about some issues with Bolt batteries, they are not sufficient to reasonably infer that GM knew that plaintiff's model year Bolt batteries had defects that impacted its safety and mileage range.  Regarding plaintiff's allegation about the October 2017 NHTSA warning about lithium-ion batteries, the Court cannot reasonably infer knowledge that charging batteries to full capacity can lead to fire risk from a warning about "overcharging" batteries.  Lastly, knowledge about one battery fire involving a Bolt is insufficient to infer knowledge about battery defects causing general fire risk in 2019 model year Bolts.

The Court also finds that plaintiff has again failed to plead the element of justifiable reliance with sufficient specificity.  Plaintiff alleges in a conclusory manner that she "reasonably and detrimentally relied on GM's misrepresentations."  Absent sufficient allegations that plaintiff was exposed to materials that included misrepresentations, this conclusory allegation is insufficient to plead reliance.

The Court thus GRANTS defendant's motion to dismiss the fraudulent misrepresentation claim on the basis that fraud was not pled with particularity as required under Rule 9(b).  The Court does not grant plaintiff leave to amend a second time.  Plaintiffs' briefing remains virtually identical in all the six virtually identical cases against GM before this Court.[10]  The Court agrees with plaintiff that GM selling numerous allegedly defective vehicles does not undercut this plaintiff's claims, but each plaintiff bought their vehicle at a different time, and details such as what advertising and marketing each plaintiff was exposed to and who they spoke with in buying the vehicle are distinct.  Additionally, plaintiff did not address all the factual deficiencies identified in the order on the first motion to dismiss, and the specific facts plaintiff has added to the complaint do not allow the Court to plausibly infer pre-sale knowledge.  The Court does not believe that the deficiencies in the FAC will be cured by the allegation of additional facts.[11]

_____

[10] Plaintiff filed virtually identical FACs in this case, 23-cv-4323-SI, 23-cv-4324-SI, 23-cv-4325-SI, and 23-cv-4358 SI.  Plaintiff did not file a FAC in 23-cv-4314-SI.

[11] The Court also notes that plaintiff did not adequately respond to many of the arguments

**B.      Fraudulent Concealment**

**1.      Whether Plaintiff's Fraudulent Concealment Claim is Barred by the Economic Loss Rule**

GM again argues that plaintiff's claim for "purely economic losses based on alleged fraudulent concealment is barred by the economic loss rule." Dkt. No. 34 at 10.  Plaintiff responds that she has alleged that she "suffered from anxiety as a direct result of the risk the vehicle may catch on fire" so the economic loss rule does not apply because the "anxiety plaintiff suffered as a result of the fire risk is separate from her alleged damages under Song-Beverly." Dkt. No. 37.

The California economic loss rule provides that when "a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic losses." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (internal quotation marks omitted).  Economic loss consists of "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property." *Id.* In *Robinson*, the California Supreme Court held that the economic loss rule did not bar the plaintiff's fraud and intentional misrepresentations claims because they were independent of the breach of contract.  *Id.* at 991.  The court clarified that its holding was "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Id.* at 993.[12]  The *Robinson* court did not address whether the defendant's "intentional concealment constitutes an independent tort." *Id.* at 991.

In December 2021, the Ninth Circuit certified to the California Supreme Court the question

---

GM raised in both the initial and now this second motion to dismiss.  The Court reminds plaintiff's counsel that "our adversarial system relies on the advocates to inform the discussion and raise the issues to the court." *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).  There is extensive case law regarding the claims plaintiff raises, but the Court cannot review all relevant cases when the parties do not bring them to the Court's attention.

[12] In *Robinson*, the defendant's "provision of faulty clutches exposed [plaintiff] to liability for personal damages if a helicopter crashed and to disciplinary action by the FAA." *Id.* at 991.

United States District Court
Northern District of California

of whether, under California law, claims for fraudulent concealment are exempted from the economic loss rule. *Rattagan v. Uber Technologies, Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021). The California Supreme Court has not yet resolved this question. District Courts in this Circuit have noted that there is conflict in the law, and some have concluded that the "weight of authority within the Ninth Circuit" suggests that the economic loss rule does apply to fraudulent omission claims under California law. *See Sloan v. General Motors, LLC*, No. 16-cv-07244-EMC, 2020 WL 1955643, at * 24 (N.D. Cal. Apr. 23 2020) (overturned on other grounds); *Cho v. Hyundai Motor Company, Ltd.*, 636 F. Supp. 3d 1149, 1161-62 (C.D. Cal. 2022). However, given the certification of this question to the California Supreme Court, the Court does not find it appropriate to dismiss plaintiff's fraudulent concealment claim on this basis.[13]

### 2.    Whether Plaintiff Plead Fraudulent Concealment With Particularity

The elements of a cause of action for fraudulent concealment are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009) (internal quotation marks and citations omitted).

GM argues that plaintiff has not alleged a relationship giving rise to a duty to disclose. Under California law, the duty to disclose for purposes of fraudulent concealment arises under four circumstances: "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has

---

[13] GM also argues that "emotional injuries incidental to purely economic damages based on fraudulent concealment are also barred by the economic loss rule." Dkt. No. 34 at 10. Setting aside the unresolved issue of whether the economic loss rule applies to fraudulent concealment claims, the cases GM cites do not support this assertion. Neither case involved a fraudulent concealment claim and both cases discuss the economic loss rule in the context of the law of negligence. The California Supreme Court has confirmed that that the economic loss rule has been applied to negligence actions. *Robinson*, 34 Cal. 4th at 989.

exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; [or] (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255–56 (2011) (citations omitted).  For (2) – (4), a duty to disclose "arises only when the parties are in a relationship that gives rise to the duty, such as seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement."  *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311 (2017) (internal quotation marks and citations omitted).  The California Supreme Court has described the necessary relationship as a "transaction" between plaintiff and defendant.  *Id.* (citing *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970).  "Such a transaction must necessarily arise from direct dealings between plaintiff and defendant."  *Id.* at 312.

GM argues that a purchase from a dealership cannot give rise to the direct, transactional relationship with GM required under California law to sustain a fraudulent concealment claim.  Dkt. No. 39 at 2.  The cases GM cites are not dispositive.[14]  Additionally, the Court is aware of one case where this District found that an agency relationship between GM and GM authorized dealerships had plausibly been pled for purposes of a fraudulent omission claim.  *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 876 (N.D. Cal. 2018).  The Court does not find it appropriate to rule on the pleadings that plaintiff cannot allege a relationship giving rise to a duty to disclose.

Plaintiff alleges that GM had a duty to disclose because "(1) Defendant had exclusive

---

[14]  The Court does not find *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311 (2017) dispositive on this point for the reasons stated in the order on the first motion to dismiss.  *See* Dkt. No. 29 at 9-10.  The cited portion of *Williams v. Yamaha Motor Corp., U.S.A.*, No. CV-1305066-BROVBKX, 2015 WL 13626022, at *6 (C.D. Cal. Jan. 7, 2015) discusses whether dealers are "agents" of automobile manufacturers in the context of pleading privity by agency in an implied warranty claim.  *Friedman v. Mercedes Benz USA LLC*, No. CV 12–7204 GAF (CWx), 2013 WL 8336127, *6 (C.D. Cal. June 12, 2013) involves a claim for fraudulent concealment, but the court's discussion cited by GM is focused on insufficient factual allegations regarding the relationship.  *Keegan v. Am. Honda Motor Co.*, 838 F.Supp.2d 929, 953 (C.D. Cal. 2012) concerns whether plaintiff adequately pled a privity relationship between Honda and dealers to sustain an implied warranty of merchantability claim.  In *Clemente v. Mercedes-Benz USA, LLC*, Case No. 8:20-cv-01577-DOC-(ADSx), 2021 WL 4539041, at *3 (C.D. Cal. June 3, 2021) the court found the plaintiff failed to allege a transactional relationship when the plaintiff didn't indicate in the complaint they purchased the vehicle from Mercedes or one of their licensed dealers but instead vaguely referred to "seller."

13

knowledge of the material, suppressed facts; (2) Defendant took affirmative actions to conceal the material facts; and (3) Defendant made partial representations about the mileage range, battery safety, and performance of the vehicle that were misleading without disclosure of the fact that the vehicle contained unsafe batteries that caused the vehicle to overheat and pose a risk of fire." FAC ¶ 87.  (1) and (2) are rote recitations of when the duty to disclose can arise under California law; the Court finds these allegations conclusory and lacking in specific substantiating facts.  Regarding (3), as discussed under Section I(A)(2), the Court finds plaintiff has pled insufficient facts about the alleged representations.

Lastly, as with the fraudulent misrepresentation claim, GM must have had pre-sale knowledge of the alleged defect.  *See Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 865 (N.D. Cal. 2018).  The Court's incorporates its ruling regarding insufficient allegations of pre-sale knowledge for the fraudulent misrepresentation claim here.

The Court thus GRANTS defendant's motion to dismiss the fraudulent concealment claim on the basis that fraud was not pled with particularity as required under Rule 9(b).  The Court does not grant plaintiff leave to amend for the reasons discussed above.

## III.   Non-Fraud California Business & Professions Code § 17200 Claims

GM did not move to dismiss plaintiff's claims under the "unfair" and "unlawful" prongs of California Business & Professions Code § 17200 in its first motion to dismiss.  GM argues in a footnote that it is now permitted to move to dismiss these remaining prongs.  Dkt. No. 34 at 13 n.5.

"A defendant who omits a defense under Rule 12(b)(6)—failure to state a claim upon which relief can be granted—does not waive that defense."  *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 317-18 (9th Cir. 2017).  However, "Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)."  *Id.* at 318.  "The defense may be asserted in other ways."  *Id*.  "Rule 12(h)(2) tells us that [a failure-to-state-a-claim defense under Rule 12(b)(6) that was not asserted in the first motion to dismiss under Rule 12] can be raised, but only in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial."  *Id.*

1    The Ninth Circuit has held that "as a reviewing court, we should generally be forgiving of a

2    district court's ruling on the merits of a late-filed Rule 12(b)(6) motion" and has recognized that

3    "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural

4    avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays."  *Id.* at 318-19.

5    However, this does not authorize nor compel this Court to consider GM's motion to dismiss

6    additional claims on this second motion to dismiss, and the Court does not find that the

7    circumstances of this case warrant doing so.  The Court thus DENIES defendant's motion to dismiss

8    the claims in plaintiff's fifth cause of action under the "unfair" and "unlawful" prongs of Business

9    & Professions Code § 17200.

10

11                                    **CONCLUSION**

12    For the reasons stated above and for good cause shown, the Court GRANTS defendant's

13    motion to dismiss the fraudulent misrepresentation and fraudulent concealment claims as well as

14    claims under the "fraudulent" prong of Business & Professions Code § 17200.  The Court does not

15    grant plaintiff leave to amend.  The Court DENIES defendant's motion to dismiss plaintiff's claims

16    under the "unlawful" and "unfair" prongs of Business & Professions Code § 17200.

17

18        **IT IS SO ORDERED**.

19    Dated: December 21, 2023

20                                                    _____

21                                                    SUSAN ILLSTON
                                                      United States District Judge
22

23

24

25

26

27

28